642 P.2d 608

Robert McCABE, Delores McCabe, Ned Van Houten, Claudette Van Houten, and Jean Williams, Plaintiffs-Appellants,

v.

Robert HAWK, et al., Defendants-Appellees,

and

Rubi Metals, Inc., Defendant.

No. 5217.

Court of Appeals of New Mexico.

Feb. 16, 1982.

Certiorari Denied March 18, 1982.

John M. Wells, Ruud & Wells, Albuquerque, for plaintiffs-appellants.

Alonzo J. Padilla, Carl J. Schmidt, Albuquerque, for defendant, Rubi Metals, Inc.

Tito D. Chavez, Albuquerque, for defendants-appellees.

## OPINION

WALTERS, Chief Judge.

Plaintiffs filed a five-count complaint in 1979 against the county commission, the district attorney, the sheriff, the Air Quality Control Board, and Rubi Metals, Inc., requesting mandamus, injunction, and damages in the various counts. The trial court dismissed Counts I, II & V of the complaint; plaintiffs appeal.

Count I requested rescission, by mandamus, of a special use permit for a "scrap metal business" originally issued to Rubi Metals in 1969 and reissued in 1973, on grounds that the county commission was without authority to grant a permit not provided for in the zoning ordinance, and that the permit granted was invalid because it was issued without proper notice to adjoining landowners. Count II sought mandamus to compel the commission, the district attorney and the sheriff to limit "foundry," "incinerator," and "smelter" operations of Rubi Metals which were alleged to be in violation of the zoning ordinance. In Count V, plaintiffs prayed for an injunction to compel Rubi Metals "to cease and desist" from operating in the manner plaintiffs complained of.

The matters remaining for trial alleged Rubi's violation of air pollution regulations in Count III, and creation of a nuisance in Count IV. In those counts plaintiffs sought a writ of mandamus to compel enforcement of the air pollution regulations, damages arising from the nuisance, and abatement of the nuisance.

The trial court made findings and conclusions with respect to the dismissed counts which agreed, in large part, with the allegations of appellants regarding the deficiencies of Rubi's original application for a special use permit in 1968, the excessive discharge of air pollutants by Rubi's operation, and failure of the Air Quality Control Board to enforce its regulations against Rubi. It concluded (1) that plaintiffs were guilty of laches in attacking issuance of the permit, having had knowledge of the commission's failure to give proper notice since 1973; thus, the zoning proceedings of 1968 and 1973 should not be set aside; (2) that Bernalillo County was a separate legal entity with "no responsibility for the Bernalillo County Air Quality Control"; (3) that mandamus directed to the Air Quality Control Board should issue to control emissions from Rubi's business; (4) that plaintiffs had an adequate remedy at law and injunctive relief was inappropriate; (5) that Counts I, II and V should be dismissed; and (6) that Counts III and IV would be reserved for trial.

Plaintiffs present three points on appeal, but challenge only Findings 22 and 24, which cover plaintiffs' knowledge of the commission's failure to notify surrounding landowners of the proposed special permit at least since 1973, and that Rubi had "made a substantial capital investment in equipment at the ... stated location since 1969 and since 1973." Regardless of the points raised on appeal, the crux of those portions of the trial court's decision which are complained of, inescapably rests on its conclusion of laches. No claim of error is made by any of the parties regarding the mandamus order to the Air Quality Control Board, which was a part of the relief asked for in Count III.

Plaintiffs argue in their Point I that "scrap metal business" is not a special use for which a permit could have been granted; that Rubi's initial application was insufficient to comply with the zoning ordinance requirements, and that the neighboring landowners were not given the legal notice required by the ordinance and statutes in effect in 1973. Point II addresses the inapplicability of the laches doctrine, and Point III is a contention that Rubi Metals, Inc. is operating outside the scope of its special use permit, if it were valid.

I.

With respect to Point III, we observe that Count III alleges violation of Air Quality Control Board regulations and requests enforcement by legal proceedings or other action; and Count IV requests relief in damages for Rubi's creating and operating a nuisance, until the nuisance be abated. Relief under either of those counts (to be tried separately from the matters decided in this case), if a nuisance in fact or nuisance per se be found, will satisfactorily provide the relief asked for in Counts I, II and V, and argued under plaintiffs' Point III. Plaintiff has conceded as much with respect to Count V, in agreeing, upon a motion to dismiss the appeal, that the appeal on dismissal of Count V was premature. *See Otero v. Burgess*, 84 N.M. 575, 505 P.2d 1251 (Ct.App.1973) regarding definitions of nuisance; *Clayton v. Mayfield*, 82 N.M. 596, 485 P.2d 352 (1971), as authority for the power of the courts to enjoin and abate a nuisance; D. Dobbs, *Remedies*, §§ 5.3 and 5.7 (1973 ed.), as stating the rules that special damages as well as abatement relief can be granted, and that nuisance may be enjoined even if the activity has been allowed by municipal ordinance or permission. Abatement, if granted, would effectively provide most of the relief plaintiffs asked for in their counts that were dismissed.

II.

Plaintiffs claim there was no evidence to support the conclusion of laches. They further assert that laches is inapplica-

ble if the permit was void because the county commission was without jurisdiction to issue it. The use of the word "jurisdiction" is incorrect; the plaintiffs' complaint was that the Board did not follow the procedural requirements of the zoning ordinance and statutes when the permit was issued. There can be no doubt of the Board's authority to entertain applications for special use permits, and to issue or withhold them after consideration. Sections 3–21–6, –7, and –8, N.M.S.A.1978; *Burroughs v. Board of Co. Comm'rs*, 88 N.M. 303, 540 P.2d 233 (1975). "Jurisdiction is the power to hear and determine a cause. *Rutherford v. Buhler*, 89 N.M. 594, 555 P.2d 715 (Ct.App.1976). The Board had the *power* to issue a special use permit.

We do not reach the contention that the permit was void if there was a basis for dismissing the claim of invalidity. This is so for the reason that it is not judicially economical to decide the merits of plaintiffs' primary claim of voidness if they are estopped from raising it. *Nesbit v. City of Albuquerque*, 91 N.M. 455, 575 P.2d 1340 (1977), relied on by plaintiffs, is not to the contrary; laches was not an issue in that case. *Nesbit* held only that lack of substantial compliance with the statutory notice requirements when zoning ordinances are to be changed renders the hearing proceedings void. The right to raise a claim, however, including the issue of lack of notice, may well be lost under the doctrine of laches. *See Pankey v. Hot Springs*, 42 N.M. 674, 84 P.2d 649 (1938); also, *Cave v. Cave*, 81 N.M. 797, 474 P.2d 840 (1970).

According to our review of the record, the attack on the ordinance was not timely made. Although § 3–21–25, N.M.S.A.1978, permits anyone aggrieved by an ordinance to file a complaint in district court, § 3–21–9, N.M.S.A.1978, requires that person to petition the district court for review of an allegedly illegal zoning decision "within thirty days after the decision is entered * * *." Recognizing, however, that our Supreme Court has held that § 3–21–9 "does not present the exclusive method for attaching invalid ordinances," *Dale J. Bellamah Corp. v. City of Santa Fe*, 88 N.M. 288,

291, 540 P.2d 218 (1975), we have searched the statutes for other applicable provisions and can find only the general statute of limitations, at § 37–1–4, N.M.S.A.1978, of four years for "all other actions not herein provided for and specified," to which *Bellamah* might have referred. It would thus appear that the trial court's finding that plaintiffs knew in 1973 of the commission's failure to notify them of the proposed special use change but did not bring suit until 1979, supports a conclusion of laches and also raises the bar of § 37–1–4, *supra*.

From *Morris v. Ross*, 58 N.M. 379, 381, 271 P.2d 823, 824 (1954), we find the four elements necessary to establish laches:

(1) Conduct of defendant giving rise to the situation for which plaintiff seeks a remedy;

(2) Delay by plaintiff in asserting his rights, though he has notice or knowledge of defendant's conduct and has had the opportunity to institute suit;

(3) Lack of knowledge or notice on defendant's part that plaintiff would assert the right on which he bases his suit; and

(4) Injury or prejudice to the defendant should plaintiff be accorded relief or the suit is not held to be barred.

The elements of (1), (2), and (3) are supported by evidence and reasonable inferences therefrom that some of the plaintiffs were Rubi's neighboring landowners since 1957 (Finding 4); others did not move into the neighborhood until 1977 and 1978; that Rubi was engaged in smelting and reclaiming scrap aluminum, incinerating and reducing copper wire in a copper reclamation process, and smelting and reclaiming scrap gold and silver since before August 1969 (Finding 10); that the use of Rubi's premises had not changed since September 1973 (Finding 12); that plaintiffs had knowledge (by reason of Mrs. Van Houton's telephone calls) since 1973 that the county commissioners had not notified adjoining landowners of the proposed special use land change (Finding 22), and that Mrs. Van Houten had complained to county officials at least eleven times about air contaminants between

1973 and 1979. There was no evidence that Rubi at any time between 1957 and 1979 had notice or knowledge that plaintiffs intended to assert any claims against it. Defendants, as the prevailing parties, are entitled to the most favorable view of the evidence and to all reasonable inferences that might flow from that evidence. *Petritsis v. Simpier*, 82 N.M. 4, 474 P.2d 490 (1970).

Concerning the fourth element of laches, plaintiffs attack the trial court's finding that defendant Rubi had made a substantial capital investment in its business between 1969 and 1973 (Finding 24). There was testimony at a pre-trial motion hearing that a wire reclaiming mechanism had been added to Rubi's operation around 1973. At the trial, evidence was produced that another warehouse was built on the premises in the same year. Reasonable inferences from that evidence sufficiently sustain the finding of detriment to defendant Rubi that supports the final element of laches. Consequently, even if plaintiffs are not barred by the four-year statute of limitations provided in § 37–1–4, nor the thirty-day provision of § 3–21–9—a matter we are not asked nor required to decide—there nevertheless was a solid basis for dismissal of Counts I, II and V upon the trial court's findings of laches, insofar as plaintiffs' suit challenged issuance of the special use permit itself, and the limitations of the permit.

The trial court's dismissal of the counts upon which this appeal is based is affirmed. Costs of this appeal are assessed against plaintiffs.

It is so ordered.

SUTIN and LOPEZ, JJ., concur.