2001-NMCA-016

24 P.3d 319

**Anthony VANDERVOSSEN and Kathy VanderVossen, Respondents,**

**v.**

**CITY OF ESPANOLA, New Mexico, a municipal corporation, Respondent,**

**and**

**Robert Seeds, Petitioner.**

No. 20,620.

Court of Appeals of New Mexico.

Feb. 16, 2001.

Certiorari Granted, No. 26,832, April 12, 2001.

Frank T. Herdman, Rubin, Katz, Salazar, Alley & Rouse, P.C., Santa Fe, NM, for Respondents VanderVossens.

John L. Lenssen, City Attorney, Espanola, NM, for Respondent City of Espanola.

David Henderson, Santa Fe, NM, for Petitioner.

## OPINION

BOSSON, Judge.

{1} Three years after Robert Seeds obtained a special exception from the Espanola Board of Adjustments (the Board) to operate an automobile storage yard in a residential zone, his neighbors, Anthony and Kathy VanderVossen, challenged the validity of that special exception before the Espanola City Council. When the City Council confirmed the special exception, the VanderVossens appealed to district court, which reversed the City Council and ordered a rehearing before the Board. Under NMSA 1978, § 39–3–1.1(E) (1999), Seeds applied to the Court of Appeals for a writ of certiorari arguing VanderVossens' failure to file their challenge to the zoning exception within the 45–day time frame allotted for appeals barred the City Council, and therefore the district court, from hearing the case. Seeds also argues that the statute vesting the Court with discretionary review is unconstitutional because it violates Seeds' "absolute right to one appeal" under the New Mexico Constitution, art. VI, § 2. Having granted certiorari, we hold that the statute vesting discretionary review in this Court does not violate the New Mexico Constitution. We further discuss how the City Council is to assess a zoning challenge filed after the statutory deadline. In conclusion, we affirm the decision of the district court in part, reverse in part, and remand for further proceedings.

## BACKGROUND

{2} In 1995, Seeds was an Espanola city councilor. Seeds was the subject of public criticism that his business, a vehicle storage facility located at his Espanola home, violated residential zoning ordinances. To quell the criticism, Seeds petitioned the Board for a special exception that would allow him to continue to operate the storage lot at his home. The Board met on December 7, 1995, and, by a vote of 4–0, granted Seeds' request.

{3} Nearly three years later, on October 16, 1998, the VanderVossens filed a petition with the Espanola City Council seeking to overturn Seeds' special exception. Kathy VanderVossen is Seeds' sister, and Anthony is his brother-in-law. The VanderVossens' petition complained that they were never notified of the 1995 hearing before the Board, and that the Board acted outside its authority in granting Seeds' special exception because the zoning ordinances did not include an automobile storage lot as a permissible exception in a residential district. Another complaint addressed the Board's failure to pass the special exception by a two-thirds majority vote, requiring at least five votes according to local ordinance.

{4} On December 1, 1998, the City Council entertained argument on the three complaints posed collectively in the VanderVossens' petition. Each party was represented by counsel and each had fifteen minutes for argument. In defense of his exception, Seeds argued that the VanderVossens had constructive notice of the 1995 hearing and decision and had failed to perfect their appeal in a timely manner. After the parties presented their cases, one city councilor proposed a motion for the City Council to declare the exception void due to the lack of notice and the failure of the Board to secure the required two-thirds majority vote to pass it. The vote on the motion resulted in a 4–4 tie. According to the city attorney, the tie vote was interpreted as a denial of the VanderVossens' petition by operation of law. The city attorney also advised the City Council that given the tie vote, "we cannot enter findings of fact and conclusions of law." Based on the city attorney's advice, the City Council did not include a factual or legal basis in its final written decision that supported its denial of the VanderVossens' petition.

{5} Dissatisfied with the outcome at the City Council hearing, the VanderVossens filed a statutory appeal to district court.[1]

---

1. For clarity, we acknowledge that the VanderVossens filed their appeal against the City of Espanola and Robert Seeds, as the caption in this case demonstrates. However, in district court and in this Court, the City of Espanola's briefs have supported the VanderVossen's legal arguments. Therefore, we treat this appeal as being between Seeds and the VanderVossens.

*See* NMSA 1978, § 3–21–9 (1999); § 39–3–1.1. The district court determined that the City Council's decision "was arbitrary and capricious and not in accordance with applicable law." Accordingly, the district court declared Seeds' exception "void and of no effect," and remanded the case to the Board for a new hearing to be conducted according to the appropriate procedures. Seeds then filed a writ of certiorari to this Court under Section 39–3–1.1(E), which we granted.

## DISCUSSION

{6} Seeds raises numerous issues in this appeal regarding questions of law, procedure, and evidence. We first consider a question not directly related to the merits of the appeal: whether our discretionary review of agency decisions is constitutionally infirm because it denies a party aggrieved by a district court decision one appeal to this Court as a matter of right. Of Seeds' remaining arguments, only two questions require our attention because they dispose of this appeal. First, if any of the irregularities raised before the City Council existed, would the Board's decision to grant Seeds' exception be indefinitely open to collateral attack? If not, did the VanderVossens appeal the Board's decision to grant Seeds' special exception in a timely manner?

*The Constitutionality of Appellate Review of Agency Decisions under Section 39–3–1.1*

{7} By a statute newly enacted in 1999, once a party has appealed an agency decision to district court, "[a] party to the appeal to district court may seek review of the district court decision by filing a petition for writ of certiorari with the Court of Appeals, which may exercise its discretion whether to grant review." Section 39–3–1.1(E). Seeds insists that once the district court assumed appellate jurisdiction over this case, this Court was required to review the district court's decision as a matter of right. Seeds bases his argument on article VI, section 2 of the New Mexico Constitution. This section, adopted on September 28, 1965, reads:

> Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly to the supreme court. In all other cases, crimi-

nal and civil, the supreme court shall exercise appellate jurisdiction as may be provided by law; *provided that an aggrieved party shall have an absolute right to one appeal.*

N.M. Const. art. VI, § 2 (emphasis added). According to Seeds' brief on appeal, Section 39–3–1.1(E) is unconstitutional because article VI, section 2 "creates an absolute right to one appeal from *all* cases brought in district court," which he contends means mandatory review, not just discretionary review by certiorari.

{8} The VanderVossens respond that this constitutional issue is moot because this Court granted Seeds' petition for certiorari. Their position is that because the issue is not dispositive of the appeal, any discussion of it would only be for academic purposes, an impermissible ground for reaching an issue. *See New Mexico Bus Sales v. Michael,* 68 N.M. 223, 226, 360 P.2d 639, 641 (1961). Basically, the VanderVossens' position is that Seeds has no standing to challenge the administrative appeals statute.

{9} We disagree. Seeds has standing because he asserts a right that is both rooted in our Constitution and, if accurately stated, diminished by mere discretionary review. *See De Vargas Sav. & Loan Ass'n v. Campbell,* 87 N.M. 469, 473, 535 P.2d 1320, 1324 (1975). We also decide to reach the constitutional issue because this is a matter of substantial public interest affecting the rights of all New Mexico citizens. *See Pinnell v. Bd. of County Comm'rs,* 1999–NMCA–074, ¶ 16, 127 N.M. 452, 982 P.2d 503. Finally, the constitutional question is easily capable of repetition, yet if the VanderVossens' objection prevails, it will always evade review in this Court. *See id.* Therefore, we proceed to decide the constitutional question.

{10} In examining the text of article VI, section 2 of the New Mexico Constitution, we seek to determine the intent of the drafters when they provided an aggrieved party with an "absolute right to one appeal." *Hannett v. Jones,* 104 N.M. 392, 393, 722 P.2d 643, 644 (1986). As an initial matter, we observe that section 2 on its face defines the

appellate jurisdiction of the Supreme Court, not the Court of Appeals. Thus, section 2 would be an unlikely venue to purposefully address the appellate jurisdiction of this Court. Logically, a guarantee that this Court would hear the appeal of every district court decision would appear in article VI, section 29, which expressly addresses the appellate jurisdiction of the Court of Appeals, and delegates to the legislature the power to define that jurisdiction. The legislature exercised that power by enacting Section 39-3-1.1. Such a command to accept jurisdiction being conspicuously absent in section 29, we hesitate to read it into section 2 by implication. *See Flaska v. State*, 51 N.M. 13, 20, 177 P.2d 174, 178 (1946) ("It is presumed that the people expressed themselves in careful and measured terms in framing the constitution and that they left as little as possible to implication." (Citation & internal quotation marks omitted.)).

{11} Focusing on the specific language of article VI, section 2, the subject matter of the paragraph is stated in its opening line: "Appeals from a judgment of the district court." A district court normally issues a judgment in the exercise of its original jurisdiction. When the district court imposes a sentence of "death or life imprisonment," it is exercising its original jurisdiction. The opening phrase of the second sentence of section 2, "[i]n all other cases, criminal and civil," takes its meaning from the context provided by the first sentence: "[a]ppeals from a judgment of the district court" acting in the exercise of its original jurisdiction. It is from the district court's exercise of original jurisdiction, therefore, that an aggrieved party is guaranteed "the absolute right to one appeal" in the manner prescribed by law, whether to the Supreme Court or the Court of Appeals. Nothing in article VI, section 2 indicates that an aggrieved party is guaranteed an appeal from the district court acting in its appellate jurisdiction, or an appeal from an appeal. Such an interpretation would stretch the subject matter of article VI, section 2 beyond its limits. We accord the plain language of our Constitution great weight. *See City of Farmington v. Fawcett*, 114 N.M. 537, 544, 843 P.2d 839, 846 (Ct.

App.1992). The appellate jurisdiction of the district court over "all cases originating in inferior courts and tribunals" is addressed in a different section of our Constitution—namely, article VI, section 13.

{12} New Mexico precedent supports the view that any right to an appeal established in article VI, section 2 attaches only to the exercise of the district court's original jurisdiction. Before section 2 was amended in 1965, our Constitution did not grant a right to appeal in every case. *See State v. Rosenwald Bros. Co.*, 23 N.M. 578, 580, 170 P. 42, 43 (1918); *State v. Chacon*, 19 N.M. 456, 460–61, 145 P. 125, 127–28 (1914). Although the right to appeal existed by statute for "any civil action," that right did not extend to "special proceedings founded upon statute ... unless the statute specifically grants [an appeal]." *Rosenwald Bros. Co.*, 23 N.M. at 580, 170 P. at 43 (holding that there was no right to appeal the district court's ruling on tax assessments because it was a special statutory proceeding) (internal quotation marks omitted); *see also In re Sevilleta De La Joya Grant, Socorro County*, 41 N.M. 305, 307–08, 68 P.2d 160, 161 (1937) (applying the same rule to the court ordered sale of real estate); *Gallup Southwestern Coal Co. v. Gallup Am. Coal Co.*, 39 N.M. 94, 95–96, 40 P.2d 627, 628 (1934) (applying the rule to the condemnation of real estate). Our courts maintained a distinction "between ordinary civil actions," over which the district courts exercised original jurisdiction, and "special proceedings founded upon statute," in which the legislature granted "special and limited jurisdiction" to "courts or tribunals." *Rosenwald*, 23 N.M. at 580, 170 P. at 43. As the court observed with regard to tax assessments, "[a]lthough the proceeding is civil in its nature, ... it is not a civil action." *Id.* at 583, 170 P. at 44. Therefore, when the legislature had not specifically granted a right to appeal particular proceedings, review could only be secured through a writ of certiorari; there was no right to a direct appeal. *See In re Blatt*, 41 N.M. 269, 287, 67 P.2d 293, 304 (1937).

{13} New Mexico law continues to differentiate civil actions from special proceedings. *See City of Tucumcari v. Magnolia Petrole-*

*um Co.*, 57 N.M. 392, 395–97, 259 P.2d 351, 353–55 (1953) (holding that the change of venue statute applicable to ordinary civil actions does not apply to special statutory proceedings). The title of article VIII of the rules of civil procedure for the district courts refers to proceedings under Rule 1–074 NMRA 2001, the rule governing zoning appeals, as "Special Proceedings" in district court. Article VI of the rules of appellate procedure, which governs agency appeals directly to appellate courts, does the same. *See* Rules 12–601 to –608 NMRA 2001.

{14} Article VI, section 13 of our Constitution confirms this historical distinction. Under that section, "[t]he district court shall have original jurisdiction in all matters and causes . . ., and such jurisdiction of special cases and proceedings as may be conferred by law." It is clear from the phrasing of section 13 that its drafters did not equate the district court's exercise of original jurisdiction, which is a constitutional grant of power, with the exercise of jurisdiction over "special cases and proceedings," which is determined by the legislature. Given the historical distinction between civil actions and special proceedings, a distinction that our constitution acknowledges, we are persuaded that the drafters of article VI, section 2 likely intended to apply the absolute right to one appeal only to the actions within original jurisdiction of the district court and not to special statutory proceedings, when they used the language, "[i]n all other cases, civil and criminal."

■ {15} Zoning determinations are special proceedings. Special proceedings "are statutory proceedings to enforce rights and remedies created by statute and which were unknown to the common law and equity practice of England prior to 1776." *In re Forest,* 45 N.M. 204, 207, 113 P.2d 582, 583 (1941). "[T]he power of local government to zone does not derive from common law; rather, such power can only be exercised pursuant to statutory authority and in conformity with a lawfully adopted ordinance." *State ex rel. Vaughn v. Bernalillo County Bd. of County Comm'rs,* 113 N.M. 347, 349, 825 P.2d 1257, 1259 (Ct.App.1991). Because the zoning decision before us is the product

of a special proceeding, not a common law or statutory civil action, article VI, section 2 simply does not apply.

{16} Therefore, in enacting Section 39–3–1.1 the legislature properly directed an appeal from city council action to the district court, sitting in the exercise of its appellate jurisdiction pursuant to article VI, section 13. Any appeal thereafter would be by legislative grace, not constitutional mandate. In the exercise of its collective judgment, the legislature has limited subsequent review by the Court of Appeals to a discretionary writ of certiorari. Nothing in article VI, section 2 prohibits this legislative scheme.

*Is the Special Exception Open to Collateral Attack?*

{17} The district court found three irregularities in the process by which the Board granted Seeds' special exception, and the court concluded that the irregularities made the exception void. First, the court found that proper notice was not given for the 1995 hearing on the special exception. The allegation of improper notice has two components. The Seeds property was not posted with notice of the public hearing as required by Espanola's zoning ordinances, nor were the VanderVossens mailed notice as required by statute when a special exception is created that does not otherwise exist in the zoning ordinances. *See* NMSA 1978, § 3–21–6 (1981). Second, although the special exception passed on a 4–0 vote, the Board needed 5 votes to meet the two-thirds majority required under Espanola's zoning ordinances. The third irregularity, argued before the City Council but never voted on, was that the Board exceeded its authority in passing the special exception. Under the ordinances, only the City Council was authorized to amend the list of zoning exceptions to include a requested use that was not currently listed as a permissive use. Given these irregularities, the VanderVossens persuaded the district court that Seeds' special exception was void, and therefore subject to collateral attack at any time.

■ {18} In claiming error by the district court, Seeds argues that these deficiencies do not make the Board's decision void, only

voidable, and that *Bogan v. Sandoval County Planning & Zoning Comm'n,* 119 N.M. 334, 340–41, 890 P.2d 395, 401–02 (Ct.App.1994), controls this case. We agree. Seeds correctly points out that an irregular zoning decision is voidable if a direct appeal is taken in a timely manner as provided by law. *See Bogan,* 119 N.M. at 340–41, 890 P.2d at 401–02. An irregular zoning decision may not be challenged by an untimely collateral attack. *See id.* According to Seeds, his special exception could be ruled null and void, and thus subject to collateral attack, only if the Board committed an ultra vires act when it granted that special exception. *See id.* Applying *Bogan,* again we agree.

 {19} For a zoning board's decision to be ultra vires in the sense that it is void, unenforceable, and indefinitely subject to collateral attack, its decision must be both "not within the authority granted" to it by the zoning statutes *and* "not reasonably relate[d] to the objectives of zoning." *Id.* at 340, 890 P.2d at 401 (citing *Mechem v. City of Santa Fe,* 96 N.M. 668, 672, 634 P.2d 690, 694 (1981)) (emphasis added). Although in this case, as in *Bogan,* the zoning board "erred in construing the ordinance and recognizing the particular use as a valid conditional use," its decision was reasonably related to the objectives of zoning. *Id.* at 341, 890 P.2d at 402. Under the standard set out in *Bogan,*

> "[i]mproper performance of an activity authorized by law is, despite its impropriety, still "authorized" within the meaning of the ... governmental function test. An agency's violation of a regulatory statute that requires the agency to perform an activity in a certain way cannot render the activity ultra vires, as such a conclusion would swallow the ... rule by merging the concepts of negligence and ultra vires."

*Id.* (quoting *Richardson v. Jackson County,* 432 Mich. 377, 443 N.W.2d 105, 108 (1989)). Therefore, mere negligence or mistake resulting in a violation of regulatory ordinance, such as the failure to secure the required two-thirds majority vote for Seeds' special exception, or a "mistake of law" in deciding what constitutes a permissible use, does not make the Board's decision an ultra vires act.

*See id.* In the absence of an ultra vires act, the only way for the VanderVossens to rectify these deficiencies was to perfect a timely appeal.

{20} The VanderVossens place much emphasis on *Dale J. Bellamah Corp. v. City of Santa Fe,* 88 N.M. 288, 540 P.2d 218 (1975) in arguing that Seeds' special exception is not merely voidable, but void. *Bellamah* did use the term "void" in its analysis of a zoning ordinance passed by less than a majority of the city council and contrary to state statute. *See id.* at 291, 540 P.2d at 221. However, such language was not central to the holding that a collateral attack upon an invalid order was permissible in that case. *See id.* at 291–92, 540 P.2d at 221–22,. *Bellamah* did not involve a lengthy delay before challenging the ordinance, and the court did not distinguish between void and voidable. *See Fernandez v. Farmers Ins. Co.,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (stating that cases are not authority for propositions not considered).

{21} *Bellamah* is part of a continuum of New Mexico appellate court opinions that have required that similar challenges to zoning decisions must be brought in a timely manner. *See Bogan,* 119 N.M. at 341, 890 P.2d at 402; *McCabe v. Hawk,* 97 N.M. 622, 624, 642 P.2d 608, 610 (Ct.App.1982) (avoiding discussion of a zoning exception being void by applying the doctrine of laches); *see also Nesbit v. City of Albuquerque,* 91 N.M. 455, 459–60, 575 P.2d 1340, 1344–45 (1977) (allowing direct challenge to a zoning decision by permitting petitioners' intervention into the case three years after permit was granted; court rejected claim of jurisdictional error but instead decided that petitioner's "application was deemed timely since [they] had no notice of the judgment until actual construction began"). These later cases, like *Bogan,* reflect a trend in modern New Mexico jurisprudence that discourages the indiscriminate use of terms such as jurisdictional error and voidness to describe what amounts to little more than an agency acting contrary to statute, an error that must be challenged in a timely manner. *See State v. Bailey,* 118 N.M. 466, 469, 882 P.2d 57, 60 (Ct.App.1994); *Sundance Mech. & Util. Corp. v. Atlas,* 109

N.M. 683, 687–90, 789 P.2d 1250, 1254–57 (1990); *Alvarez v. County of Bernalillo,* 115 N.M. 328, 328, 850 P.2d 1031, 1031 (Ct.App. 1993) (observing that "[f]ew words in the legal lexicon are as mischievous as the word 'void'"). The Supreme Court's opinion in *Mechem* on which this Court expressly relied in *Bogan* best illustrates a truly void zoning decision subject to collateral attack, because in that case the municipality used its zoning authority to control property *ownership,* not just property *use.* Accordingly, *Bellamah* does not dissuade us from our holding that the VanderVossens were required to challenge Seeds' special exception in a timely manner.

### Did the VanderVossens Perfect a Timely Appeal to the City Council?

{22} Having determined that these irregularities can only be redressed in a properly perfected appeal, the real crux of this case is whether the VanderVossens timely filed their petition with the Espanola City Council. Clearly, the VanderVossens did not file their appeal within 45 days from the date the special exception was granted as prescribed by law. Again, *Bogan* sets out the standards for our analysis.

{23} If the VanderVossens had prior notice of the hearing for a zoning permit, the time for appeal accrues with the issuance of the permit. "[W]here circumstances are such that a reasonably prudent person should make inquiries, that person is charged with knowledge of the facts reasonable inquiry would have revealed." *Bogan,* 119 N.M. at 341, 890 P.2d at 402. This is true even for someone who failed to get statutory notice by mail, but was fully aware that a hearing would take place. *See Hawthorne v. City of Santa Fe,* 88 N.M. 123, 124, 537 P.2d 1385, 1386 (1975). Therefore, if the VanderVossens knew in advance about the zoning hearing but failed to inquire about the results of the hearing, their appeal should have been filed within the time frame set by zoning ordinances. *See Bennett v. City Council for Las Cruces,* 1999–NMCA–015, ¶ 12, 126 N.M. 619, 973 P.2d 871; *Bogan,* 119 N.M. at 341–42, 890 P.2d at 402–03.

{24} However, if the VanderVossens never received notice of the hearing in any form, and only learned of the hearing after the fact, the time for an appeal would begin to run when the VanderVossens were first made aware of the hearing or the Board's decision to grant Seeds' special exception. *See Bogan,* 119 N.M. at 344, 890 P.2d at 405 (holding that the time for an appeal started when the petitioner was first made aware of the zoning "decision to allow the erection of the billboards"); *see also McCabe,* 97 N.M. at 624, 642 P.2d at 610 (determining that when smelting activities of defendant were ongoing, the time to challenge the grant of a special use permit should have been when plaintiffs knew "of the commission's failure to notify them of the proposed special use change").

{25} Thus, the outcome of the present litigation depends on whether the VanderVossens had prior knowledge of the Board hearing, or only later became informed of the Board's decision to issue the special exception and then filed a timely petition to the City Council. Without recitation of all of the evidence presented before the City Council, we note that each side provided evidence in support of its theory based on the time and type of notice that the VanderVossens received. There was unsworn testimony by Mrs. Seeds who claimed that Anthony VanderVossen had actually attended the hearing to testify for Seeds. On the other hand, there was sworn testimony in the form of an affidavit from the VanderVossens that they did not learn of Seeds' special exception until shortly before they filed their petition. Resolving the timeliness of the VanderVossens' petition to the City Council turns on which assertion of facts prevails.

{26} Unfortunately, in denying the VanderVossens' petition, the City Council declined to resolve the issue. By statute, the City Council was required to provide a written factual and legal basis for its decision, which it did not do. *See* § 39–3–1.1(B)(1). We emphasize that this Court, as well as the district court exercising appellate jurisdiction under Section 39–3–1.1, is not a fact-determining body. *See Downtown Neighborhoods Ass'n v. City of Albuquerque,* 109 N.M. 186,

189, 783 P.2d 962, 965 (Ct.App.1989) ("Neither we nor the district court may make the [factual] decision in the first [place]."). When a decision turns on "factual questions that the governing body failed to resolve, the reviewing court must remand for further proceedings." *Id.* We are obligated to do the same.

 {27} Seeds asserts that, given the City Council's split vote, it would be "senseless" to remand this case to the Council for development of a factual record and a legal justification for its decision. This position overlooks the duty imposed by the legislature on the City Council to provide the factual and legal basis for its decision. Although we defer to the judgment of agencies when deference is due, zoning decisions are reviewed under an administrative standard. *See West Old Town Neighborhood Ass'n v. City of Albuquerque,* 1996–NMCA–107, ¶ 11, 122 N.M. 495, 927 P.2d 529 (stating the standard of review for zoning decisions); *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 39, 888 P.2d 475, 485 (Ct.App. 1994) (holding that agencies must first use their resources to be accorded deference). Under this standard, if the legislature directs an agency to state the reasons for its decision, a reviewing court is prohibited from supplying " 'a reasoned basis for the agency's action that the agency itself has not given.' " *Atlixco Coalition v. Maggiore,* 1998–NMCA– 134, ¶ 20, 125 N.M. 786, 965 P.2d 370 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

## CONCLUSION

{28} Insofar as the district court reversed the action of the City Council, we affirm. We reverse that portion of the district court order declaring the City Council's actions void. Instead, we remand this appeal to the district court with instructions to remand to the City Council so that it will conduct a hearing to develop a factual record and a legal rationale for its decision. If the facts reveal that the VanderVossens had actual notice of the 1995 hearing, the City Council must deny their petition. If the facts disclose that the VanderVossens were not on constructive notice until 45 days before the date of their petition to the City Council, then they made a timely request to overturn a voidable decision of the Board, and the City Council must decide the merits of the petition.

{29} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge, JONATHAN B. SUTIN, Judge.