2005-NMCA-032

108 P.3d 558

**Darryl LEWIS, Petitioner–Appellant,**

v.

**The CITY OF SANTA FE, and Wal–Mart Stores, Inc., Respondents–Appellees.**

**No. 23,849.**

Court of Appeals of New Mexico.

Jan. 27, 2005.

Barry Green, Santa Fe, NM, for Appellant.

Bruce Thompson, City Attorney, Santa Fe, NM, for Appellee City of Santa Fe.

Frank T. Herdman, Brenden J. Murphy, Rubin Katz Law Firm, P.C., Santa Fe, NM, for Appellee Wal–Mart Stores, Inc.

## OPINION

KENNEDY, Judge.

{1} Petitioner Darryl Lewis filed an appeal with the district court seeking review of an administrative action of the City of Santa Fe (the City), by which Wal–Mart Stores, Inc., (Wal–Mart) was authorized to develop a gasoline filling station on one of its existing properties. The district court dismissed the appeal on grounds that it constituted an impermissible collateral attack on a preexisting judgment. We granted Petitioner's petition for writ of certiorari. We reverse and remand for further proceedings.

## BACKGROUND

{2} Wal–Mart operates a Sam's Club store in Santa Fe. In February 2001, Wal–Mart sought permission from the City to increase the intensity of use at that location by erecting an unmanned gasoline filling station in the parking lot to serve its members. After gathering information from a variety of sources, the City's Planning Commission denied the application. Wal–Mart then appealed to the City Council. The City Council reviewed the recommendations of the Planning Commission, conducted a public hearing, and denied Wal–Mart's appeal in October 2001.

{3} Dissatisfied with the City's decision, Wal–Mart appealed to the district court. Shortly thereafter, the City and Wal–Mart reached a settlement of the suit in which the City agreed to approve the gasoline filling station, subject to certain conditions. In an executive session without a public hearing and without public comment, the City Council then voted to approve the settlement agreement and the proposed development on February 27, 2002. Petitioner filed a timely appeal with the district court alleging in part that while the development was first disapproved after a public hearing at which he spoke against it, "[t]here was no public meeting" and "[n]o public comment was allowed"

when the City subsequently approved the development on February 27, 2002, although "there was no significant change in the application." Petitioner therefore alleged in his appeal that the City's approval of the development was arbitrary, capricious, not in accordance with law, and not supported by substantial evidence. *See* NMSA 1978, § 3–21–9 (1999) (providing for an appeal by a person aggrieved by a decision of the zoning authority); NMSA 1978, § 39–3–1.1 (2004) (setting forth the procedure for such an appeal).

{4} After Petitioner filed the foregoing appeal, the district court entered a stipulated order of dismissal in Wal–Mart's appeal on March 18, 2002. It recites that the City and Wal–Mart have resolved and settled Wal–Mart's appeal pursuant to a settlement agreement and then orders, "that this matter be, and hereby is, dismissed pursuant and subject to the terms and provisions of the [Settlement] Agreement."

{5} Shortly after the stipulated dismissal was entered, Wal–Mart intervened in Petitioner's administrative appeal to the district court. Wal–Mart then filed a motion to strike Petitioner's appeal, and the City filed a similar motion to dismiss. After a hearing, the district court granted the motions and dismissed Petitioner's appeal on the specific, limited ground that Petitioner's appeal constituted an impermissible collateral attack on the order of March 18, 2002. Petitioner timely filed a petition for writ of certiorari with this Court, seeking review of the district court's ruling.

## STANDARD OF REVIEW

{6} This Court reviews district court decisions in administrative appeals under an administrative standard of review. *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003–NMSC–005, ¶¶ 16–17, 133 N.M. 97, 61 P.3d 806. Generally speaking, we "conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Id.* ¶ 16. In this case, we apply the latter portion of this standard, insofar as we are called upon to

review the district court's dismissal of the appeal. "A decision to grant summary judgment on preclusion principles is reviewed under a de novo standard." *Apodaca v. AAA Gas Co.*, 2003–NMCA–085, ¶ 76, 134 N.M. 77, 73 P.3d 215.

## DISCUSSION

### Preclusive Effect of the Stipulated Dismissal and Settlement Agreement

{7} The order of dismissal that we review here is premised on the district court's determination that Petitioner's administrative appeal should be characterized as an impermissible collateral attack on the March 18, 2002, order. This is the exclusive subject of our review. *See Vill. of Angel Fire v. Wheeler*, 2003–NMCA–041, ¶ 9, 133 N.M. 421, 63 P.3d 524 (observing that in the context of administrative appeals, it is generally inappropriate for this Court to rule on issues that the district court has not passed upon).

{8} Petitioner's pleadings, including the notice of administrative appeal and the statement of appellate issues, make clear that Petitioner seeks to challenge the City's official decision on February 27, 2002, to approve the development of a filling station at the Sam's Club location. This constitutes a statutorily authorized, direct attack on a land use decision by the City under Section 31–2–9. *See also* § 3–19–8; § 3–21–9; § 39–3–1.1 (providing for an appeal to the district court by any person in interest dissatisfied with an order or determination of a planning commission after review of the order or determination by the governing body of the municipality). Although the City, Wal–Mart, and the dissent assert that Petitioner was required to intervene in the litigation between them in order to protect his right to challenge the development, they cite no New Mexico authority to support this position, and we decline any invitation to create such authority here. We fail to see how Petitioner's statutory right to seek review of the City's land use decision should be defeated by the subsequent execution of a private settlement agreement and the entry of a stipulated order of dismissal.

### The Dismissal Based Upon the Settlement Agreement is Not an Order Entitled to Preclusive Effect

{9} The City and Wal–Mart contend that Petitioner's appeal should be regarded as an impermissible collateral attack on the order of the district court by which Wal–Mart's lawsuit against the City was dismissed because the order specifically references the settlement, and because the settlement contains the terms of the very development agreement that Petitioner seeks to overturn. We are unpersuaded for several reasons.

{10} First, we do not regard Petitioner's administrative appeal as a collateral attack. A collateral attack is "an attempt to avoid, defeat, or evade [a judgment], or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking" the judgment. *Lucus v. Ruckman*, 59 N.M. 504, 509, 287 P.2d 68, 72 (1955) (internal quotation marks and citation omitted), *overruled on other grounds by Kalosha v. Novick*, 84 N.M. 502, 504, 505 P.2d 845, 847 (1973). In this case, all that is at issue is a stipulated order of dismissal. Petitioner's appeal from the development decision of the City Council does not in any way seek to "avoid, defeat, or evade" the stipulated order of dismissal. Instead, it seeks review of the substantive acts undertaken by the City making a zoning decision to secure the dismissal.

{11} The City and Wal–Mart urge that Petitioner's appeal represents a collateral attack on the settlement between them, insofar as Petitioner seeks a reversal of the development agreement contained therein. The jurisprudence pertaining to collateral attacks pertains to judgments and other adjudications. *See, e.g., Hanratty v. Middle Rio Grande Conservancy Dist.*, 82 N.M. 275, 276, 480 P.2d 165, 166 (1970) (holding that a party could not collaterally attack a default judgment obtained against him in a foreclosure action); *City of Socorro v. Cook*, 24 N.M. 202, 212, 173 P. 682, 685 (1918) (holding that a judgment as to the title in a prior litigation was not subject to collateral attack); *Dugan v. Montoya*, 24 N.M. 102, 115, 173 P. 118, 122 (1918) (observing that judgments evidenced

by patents are immune from collateral attack); *VanderVossen v. City of Espanola,* 2001–NMCA–016, ¶¶ 17–21, 130 N.M. 287, 24 P.3d 319 (applying the bar against collateral attacks in regard to a municipal authority's final zoning decision); *Sanders v. Estate of Sanders,* 122 N.M. 468, 469, 927 P.2d 23, 24 (Ct.App.1996) (holding that an attempt to set aside a divorce decree constituted an impermissible collateral attack); *Royal Int'l Optical Co. v. Tex. State Optical Co.,* 92 N.M. 237, 241, 586 P.2d 318, 322 (Ct.App.1978) (holding that a judgment establishing a party's exclusive right to use a trade name was not subject to collateral attack). It has no application to contractual relationships. It is well established in this state that settlements and judgments entered by the consent of the litigants essentially represent contractual agreements. *See Owen v. Burn Const. Co.,* 90 N.M. 297, 299, 563 P.2d 91, 93 (1977) (observing that "a stipulated judgment is not considered to be a judicial determination; rather it is a contract between the parties") (internal quotation marks and citation omitted); *Pope v. The Gap, Inc.,* 1998–NMCA–103, ¶ 18, 125 N.M. 376, 961 P.2d 1283 (holding that a consent judgment is essentially a contract).

{12} Had the stipulated dismissal meaningfully incorporated the settlement, Petitioner's appeal might have constituted an indirect attack on the district court's order. *See, e.g., Sanders,* 122 N.M. at 469, 927 P.2d at 24 (addressing an attempt "to set aside a property settlement agreement that was merged into a divorce decree"). However, the district court's order merely references the settlement agreement. Nothing in the order suggests that the district court independently evaluated the validity of the settlement agreement or passed upon the propriety of the City's development decision. *Cf. State ex rel. Martinez v. Kerr–McGee Corp.,* 120 N.M. 118, 122, 898 P.2d 1256, 1260 (Ct. App.1995) (observing that it would be "unfair to presume prior determination of an issue from the mere fact of settlement when the contrary may more likely be true"). We regard this seemingly technical distinction as something of substantive import.

{13} As an approval of no more than a stipulation to dismiss because of a settlement agreement, the district court order does not represent an adjudication of rights that is entitled to preclusive effect. *Cf. Sanchez v. Saylor,* 2000–NMCA–099, ¶¶ 24–25, 129 N.M. 742, 13 P.3d 960 (holding that a bankruptcy court's approval of sale did not bar a subsequent action for conversion; because the matter under consideration was not actually litigated in the bankruptcy proceedings, the action for conversion did not constitute an impermissible collateral attack on a federal judgment). In other words, the nature of Wal–Mart's suit was to appeal the City's zoning decision against it. The subsequent stipulated order of dismissal did not determine the rights of the parties with regard to the substance of that underlying dispute.

{14} Finally, even if we were to assume that the stipulated dismissal meaningfully incorporated the settlement agreement, such that Petitioner's appeal represented a collateral attack on an adjudication, our authorities indicate that Petitioner's action still would not be barred. Our review of the published case law has revealed that in the past, judgments entered by the consent of the parties and upon stipulations have only been regarded as immune from collateral attack by the parties themselves, or those in privity with them. *See Myers v. Olson,* 100 N.M. 745, 748, 676 P.2d 822, 825 (1984) ("Properly authorized and acknowledged consent judgments and judgments rendered on stipulations are conclusive of all claims determined therein and may not be collaterally attacked by the parties thereto."); *Johnson v. Aztec Well Servicing Co.,* 117 N.M. 697, 700, 875 P.2d 1128, 1131 (Ct.App.1994) (observing that a judgment entered by consent pursuant to a settlement "is not subject to collateral attack by a party or a person in privity, and it bars a second suit on the same claim or cause of action") (internal quotation marks and citation omitted).

■ {15} Accordingly, to the extent that Petitioner's administrative appeal could be characterized as a collateral attack on the stipulated dismissal and settlement, the propriety or impropriety of the attack would turn upon Petitioner's status as a party to

the litigation or a person in privity with a party. It is undisputed that Petitioner was not a party to the litigation between the City and Wal–Mart. "A person in privity with another is a person so identified in interest with another that he represents the same legal right." *Bentz v. Peterson,* 107 N.M. 597, 600, 762 P.2d 259, 262 (Ct.App.1988). Generally speaking, governmental agencies are only said to be in privity with private individuals to the extent that the entity "acts on behalf of an individual claimant and seeks individual relief." *Rex, Inc. v. Manufactured Hous. Comm.,* 119 N.M. 500, 509, 892 P.2d 947, 956 (1995). In this case, the City's involvement in the prior litigation with Wal–Mart could not be characterized as action on behalf of any individual. Had the City stood by its initial decisions to reject Wal–Mart's development plan, it might have been "identified in interest" with Petitioner, who has consistently registered opposition to the proposed development. However, in the brief course of the litigation with Wal–Mart, the City reversed its position. This position had resulted from full administrative consideration by its Planning Council. When Wal–Mart appealed, the City Council also gave it due consideration before it denied Wal–Mart's appeal. By settling the case and opting to permit Wal–Mart to move forward with the development in order to obtain a rapid resolution on terms that it came to find acceptable, the City made another zoning decision without this full process. Because the City could not be said to have acted on Petitioner's behalf, and because Petitioner's interests have proven demonstrably dissimilar from the City's, we conclude that Petitioner was not in privity with the City.

{16} We reiterate that Petitioner had the statutory right to appeal a zoning decision pursuant to Section 3–19–8, which states: "Any person in interest dissatisfied with an order or determination of the planning commission, after review of the order or determination by the governing body of the municipality, may commence an appeal in the district court pursuant to the provisions of Section 39–3–1.1." By reversing its course, the City determined an issue, and Petitioner had the right to appeal its decision.

{17} In summary therefore, we conclude that the district court erred in ruling that Petitioner's administrative appeal constitutes an impermissible collateral attack on the stipulated order of dismissal.

**Alternative Bases for Affirmance Also Fail**

■ {18} The City and Wal–Mart urge this Court to consider alternative bases for affirmance. First, we address their contention that the challenged action is essentially legislative in nature rather than quasi-judicial, such that it should not be subject to administrative review. As the preceding analysis suggests, we reject this characterization. Although the approval of a settlement agreement is superficially at issue, Petitioner's challenge is directed at the underlying decision to permit the proposed development to proceed. Both the minutes of the February 27, 2002, City Council meeting and the settlement agreement clearly reflect that a development decision pertaining to the Sam's Club property was made. Such site-specific development determinations are properly classified as quasi-judicial in nature. *See W. Old Town Neighborhood Ass'n v. City of Albuquerque,* 1996–NMCA–107, ¶ 11, 122 N.M. 495, 927 P.2d 529 (holding that a zoning decision pertaining to a specific property is not a legislative act, but is rather quasi-judicial in nature). The fact that the City's quasi-judicial development decision is embedded in a settlement agreement does not immunize it from review.

■ {19} The City and Wal–Mart further contend that Petitioner lacks standing to pursue an administrative appeal. However, the district court did not dismiss on this basis, nor did it pass upon the matter. As a result, the question of standing is not properly before us. *See Mitchell v. City of Santa Fe,* 99 N.M. 505, 507–08, 660 P.2d 595, 597–98 (1983).

■ {20} Finally, the City and Wal–Mart argue that Petitioner should be prevented from proceeding with an administrative appeal under Rule 1–074 NMRA because the record is inadequate, and because they will be prevented from marshalling and present-

ing pertinent evidence. However, we are aware of no authority for the proposition that an appeal should be denied altogether because one of the parties regards the procedures to be unduly limiting. In any event, should it prove helpful, the district court is at liberty to remand for the purpose of creating a record that is adequate for review. *See Martinez v. N.M. Tax. & Rev. Dep't,* 117 N.M. 588, 589, 874 P.2d 796, 797 (Ct.App. 1994); *Littlefield v. State ex rel. Tax. & Rev. Dep't,* 114 N.M. 390, 394, 839 P.2d 134, 138 (Ct.App.1992). In this regard, we note two germane points. First, the district court's review of the City's decision pursuant to statute is governed in its scope by Section 39–3–1.1, which plainly delineates the factors a district court may properly consider in such an appeal. *See Hart v. City of Albuquerque,* 1999–NMCA–043, ¶ 15, 126 N.M. 753, 975 P.2d 366 ("The procedure for district court review of zoning decisions under both Section 3–21–9 and Section 3–19–8 ... now follow [Section 39–3–1.1] for obtaining court review of an agency's decision."). Second, if the record is insufficient to consider these factors, (i.e., whether the municipality acted fraudulently, arbitrarily or capriciously, without substantial evidence, or in accordance with the law) it could well be related to the City's decision to handle discussion of the settlement agreement in an executive session. In such a case, the district court, as we mentioned above, can remand for creation of an adequate record.

### Advisory Issues

{21} Petitioner invites this Court to issue rulings on a number of additional questions, including: (1) whether the record on appeal should include the record of all proceedings pertaining to the proposed gasoline filling station; (2) whether Petitioner's due process rights were violated; (3) whether the City engaged in impermissible contract zoning; and (4) whether the City's decision was arbitrary, capricious, unsupported by substantial evidence, not in accordance with law, or beyond the scope of its authority. We decline the invitation to rule on these issues, on grounds that the district court did not pass upon any of them. *See Ramirez v. City of Santa Fe,* 115 N.M. 417, 418–19, 852 P.2d

690, 691–92 (Ct.App.1993) (declining to address a number of issues presented in a zoning case, on grounds that the district court had not passed upon them, and on grounds that the courts do not issue advisory opinions).

{22} Likewise, we do not consider this case to have much to do with the price of gas in Santa Fe. As Councilor Martinez stated when the City Council voted, "[t]he misconception is that anybody can buy gas [at Sam's Club], but they won't be able to if they don't ... belong to Sam's Club."

### CONCLUSION

{23} For the foregoing reasons, we conclude that the district court erred in determining that Petitioner's administrative appeal constitutes an impermissible collateral attack on a prior judgment. We therefore reverse and remand for further proceedings.

{24} **IT IS SO ORDERED.**

I CONCUR: MICHAEL E. VIGIL, Judge.

IRA ROBINSON, Judge (dissenting).

{25} My pursuit of justice takes me in a different direction than the majority in this case. I am, therefore, compelled to dissent.

{26} I would affirm the decision of the district court dismissing Petitioner's administrative appeal on the ground that it constituted an impermissible collateral attack on the stipulated order of dismissal in the previous case involving only the City and Wal–Mart. That previous case was dismissed in recognition of a settlement agreement reached between the City and Wal–Mart, which resolved and settled the issues in Wal–Mart's appeal. The majority says that the stipulated judgment is just a private contractual agreement such that the appeal is not a collateral attack upon an adjudication. I disagree. Furthermore, the majority admits that if "the stipulated dismissal [had] meaningfully incorporated the settlement, Petitioner's appeal might have constituted an indirect attack on the district court's order." The judgment or order of dismissal recited that the litigation was terminated "pursuant and subject to the terms and provisions of

the [Settlement] Agreement." The court waited three weeks after the City Council voted on February 24, 2002, to approve the settlement agreement. I am satisfied that there is little or no difference between the language in this judgment or order and those which "adopt" or "incorporate" a settlement agreement.

{27} The majority defines a collateral attack as "an attempt to avoid, defeat, or evade [a judgment], or deny its force and effect." *Lucus,* 59 N.M. at 509, 287 P.2d at 72 (internal quotation marks and citation omitted). The majority then contends that Petitioner's appeal from the development decision of the City Council does not in any way seek to "avoid, defeat, or evade" that dismissal. *Id.* I say, of course it does. That is precisely what Petitioner seeks to do. Furthermore, Petitioner certainly seeks to deny the "force and effect" of this dismissal pursuant to the settlement agreement. *Id.* That makes it an impermissible collateral attack.

{28} If Petitioner cared about this situation, he should have intervened in the previous case when Wal–Mart appealed it to the district court in Santa Fe. He was aware of it, but did nothing until he filed a second case—an administrative appeal—rather than join in the Wal–Mart/City appeal in district court. *Callaway v. Ryan,* 67 N.M. 283, 287, 354 P.2d 999, 1002 (1960) (stating piecemeal litigation is not favored by the courts and is the function of the trial court to rule on such matters initially); *see also M & G Engines v. Mroch,* 631 P.2d 1177, 1178 (Colo.Ct.App. 1981) (stating that separate action by third party was impermissible challenge to the disposition of a prior action where the third party had an opportunity to intervene).

{29} *Sanders v. Estate of Sanders,* 1996–NMCA–102, 122 N.M. 468, 927 P.2d 23, explains that recourse to collateral attack through an independent action is considered " 'a last ditch remedy' " and is "reserved for 'exceptional circumstances.' " *Id.* ¶ 16.

{30} Petitioner filed his administrative appeal with knowledge of the previous case and before the previous case had been dismissed. Rather than seeking to intervene, he filed an entirely separate action in which he was objecting to the manner in which the prior action was eventually settled. I do not assert that he was required to intervene. I say that he could have intervened.

{31} While I realize that under Section 3–19–8 "[a]ny person in interest dissatisfied with an order or determination of the planning commission ... may commence an appeal," that is only part of what happened here. Petitioner is not just filing an appeal of a planning commission or City Council ruling. He is attacking another judgment of another court in another case. That is what makes it a collateral attack and the court was correct in dismissing it as improper and impermissible.

{32} Once the matter was appealed in the previous lawsuit by Wal–Mart, the City, as a party to the lawsuit, had the right to reach a settlement. It should not be any different than any other lawsuit. Public policy favors enforcement of settlement agreements. *Bd. of Educ. v. N.M. State Dep't of Pub. Educ.,* 1999–NMCA–156, ¶ 14, 128 N.M. 398, 993 P.2d 112; *Gonzales v. Atnip,* 102 N.M. 194, 195, 692 P.2d 1343, 1344 (Ct.App.1984).

{33} I reject Petitioner's contention that Wal–Mart requested rezoning. Article 14–3.5(A)(1) of the Santa Fe Land Development Code defines a "rezoning" as an "amendment to the zoning map." Santa Fe, N.M., Land Development Code art. 14, § 3.5(A)(1). Wal–Mart did not request an "amendment to the zoning map." *Id.* A gasoline station is a lawful use under the zoning that Wal–Mart already had.

{34} Nor does Article 14–3.5(D), § 3.5(A)(1) of the Santa Fe Land Development Code have any relevance as Petitioner suggests. That article deals with the possible rescission of a zoning map change (or "rezoning") if the property owner has failed to take certain steps to develop the property, such as development plan approval, applying for building permits, etc., within two years of the rezoning. *Id.* Wal–Mart requested an amendment to their existing development plan—not a zoning change—at their Sam's Club location to allow gas pumps.

{35} Petitioner also assumes, without explanation or citation to legal authority, that this Court can or should scrutinize the City

Council's reasons for approving the settlement agreement. In particular, Petitioner argues that "the Councilor's only concerns were the price of gasoline."

{36} The City Council could reasonably have concluded that there is a community good to be achieved by breaking the monopoly on inflated gasoline prices in Santa Fe, which has kept Santa Fe gasoline prices considerably higher than those in Albuquerque and other cities for a long time.

{37} The majority seems overly impressed with the fact that only Wal–Mart's Sam's Club members will be able to take advantage of lower gas prices at Sam's Club gas pumps. The reality is that there are lots of Sam's Club members in Santa Fe. That is the reason some people claimed to be concerned with an increase in traffic at the site.

{38} At present, all those Sam's Club members shop for gas at high-priced Santa Fe stations. It is unreasonable to believe that once Sam's Club lowers gas prices, the other stations will keep their prices high and not reduce them to be competitive. I am convinced that the City Council already figured out that this is the way to end unreasonably high gas prices in Santa Fe.

{39} The majority states that "[w]e do not consider this case to have much to do with the price of gas in Santa Fe." I think that is exactly what it is all about.

{40} The people of Santa Fe are entitled to the relief that the City Council proposes to give them.

{41} I respectfully dissent.