2007-NMCA-156

174 P.3d 531

STATE of New Mexico, ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner,

v.

ANDREE G., Respondent,

and

Mohammed A., n/k/a Sydney B., Respondent–Appellee,

and

In the Matter of Joshua G., a Child,

v.

State of New Mexico, ex rel. Human Services Department, Petitioner in Intervention–Appellant.

No. 25,869.

Court of Appeals of New Mexico.

Oct. 15, 2007.

NM Children, Youth & Families Dept., Rebecca J. Liggett, Santa Fe, NM, for Petitioner.

Andree G., Capitan, NM, pro se Respondent.

Adam D. Rafkin, P.C., Adam D. Rafkin, Ruidoso, NM, for Respondent–Appellee.

NM Human Services Dept., M. Elizabeth Price, Las Cruces, NM, for Petitioner in Intervention–Appellant.

## OPINION

ALARID, Judge.

{1} We withdraw the opinion filed in this case on May 10, 2007, and substitute the following in its place. The motion for rehearing is denied.

{2} In this appeal, we determine whether Appellant, the New Mexico Human Services Department (HSD), is entitled to reopen and intervene in a neglect proceeding to litigate interstate child support issues between Respondents, Andree G. (Mother) and Sydney B. (Father), pursuant to the Uniform Interstate Family Support Act (UIFSA), NMSA 1978, §§ 40–6A–100 to –903 (1994, as amended through 2005), and the Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 U.S.C. § 1738B (2000).

{3} In the neglect proceeding below, the district court entered an order directing Father to reimburse the Children, Youth and Families Department (CYFD) for the reasonable costs of support and maintenance of Child pursuant to NMSA 1978, § 32A–4–26 (1993) of the Children's Code. After the case was dismissed, Mother filed a petition in the Texas district court to recover child support from Father pursuant to the Texas UIFSA. The Texas court entered an order awarding monthly child support to Mother. HSD now seeks to reopen and intervene in the neglect action for the purpose of reasserting Mother's child support claims against Father. In doing so, HSD seeks to contest the validity of the support order issued by the Texas court on the ground that it lacked subject matter jurisdiction to modify the district court's existing order, and to obtain a determination that the district court issued the controlling order and thus has continuing, exclusive jurisdiction over all child support matters pursuant to the UIFSA and the FFCCSOA.

{4} We hold that because Mother initiated a UIFSA proceeding in Texas following the dismissal of the neglect case, and invoked the jurisdiction of the Texas court to establish child support from Father in the first instance, HSD is now precluded from collaterally attacking the Texas order, which is entitled to full faith and credit, and from relitigating Mother's claims of child support against Father. We also hold that because the support orders entered by the district court and the Texas court address wholly different support obligations owed by Father, the Texas court did not modify the district court's order and thus did not act contrary to the jurisdictional provisions of the UIFSA and the FFCCSOA. We therefore affirm the district court's refusal to reopen the matter.

## BACKGROUND

{5} This case originated as a proceeding for "[a] family in need of court-ordered services" pursuant to NMSA 1978, § 32A–3B–2 (1993) of the Children's Code, but has evolved into an interstate child support dispute between a single mother and an absent father. Mother and Child are residents of New Mexico. Father is a resident of Texas.

{6} On April 3, 2000, CYFD filed a petition in the district court for court-ordered family services pursuant to Section 32A–3B–2. Child, who was then thirteen-years-old, had run away from home. Because Mother was unable to reclaim custody of Child due to his anger issues, he was placed in the protective custody of CYFD on March 30, 2000.

{7} On June 26, 2000, the district court determined that the family was in need of court-ordered services pursuant to the Children's Code. The district court ordered that Child remain in the legal custody of CYFD and adopted a treatment plan for Child and Mother. The district court also referred the matter to the Child Support Enforcement Division (CSED) to determine whether Mother was liable for ongoing child support.

{8} On December 11, 2001, CYFD filed an abuse and neglect petition against Mother and Father. The petition alleged that Child was neglected because Mother was unable to adequately care for Child due to physical or mental disability, and because Father had abandoned and failed to support Child. The petition further alleged, in accordance with Section 32A–4–26, that Mother and Father were responsible for paying the "reasonable costs of support and maintenance" of Child that they are financially able to pay if Child is adjudicated to be neglected or abused and is placed with an agency or an individual other than the parent, and referred the matter to CSED.

{9} On June 25, 2002, the district court entered a judgment and disposition, finding that Child was neglected and ordering that Child remain in the legal custody of CYFD. The district court further ordered that the matter be referred to CSED to determine whether Mother and Father were liable for ongoing child support. The judgment provided that "CYFD may share information with CSED . . . for the purpose of collection of child support from the parents."

{10} On September 19, 2002, the district court held a permanency hearing as to Mother and an initial judicial review hearing as to Father. At the permanency hearing, the district court ordered that legal custody of Child be returned to Mother based on the significant progress made by Child and Mother. At the initial judicial review hearing, CYFD acknowledged that Father had complied with the court-ordered treatment plan requiring that he provide income information for the calculation of child support to be paid to CYFD for the time Child was in CYFD's custody. The attorney for CYFD stated that she would prepare a worksheet calculating the amount of child support owed by Father to CYFD and "put together" a child support order. However, no order calculating the amount of child support owed by Father was ever presented to the district court.

{11} The issue of whether Father owed child support to Mother and Child was also raised at the judicial review hearing. Father's attorney acknowledged that "[M]other and [C]hild may have a right to pursue retroactive and ongoing child support and agreed that CYFD could give them the financial information to pursue those claims." However, the attorneys for Father and CYFD did not think the district court had jurisdiction to address any child support claims between Mother and Father in the neglect proceeding, pointing out that only the limited issue of Father's reimbursement of child support to CYFD was before the court. The district court agreed, reminding Mother to file any necessary pleadings or causes of action in pursuing additional support claims against Father, and suggesting that such relief be sought in a separate proceeding. HSD never intervened, and no pleadings were ever filed on behalf of Mother, to collect child support from Father in the neglect proceeding prior to the motion to reopen. Mother also took no action challenging the district court's view that it had no jurisdiction to hear Mother's child support claims against Father.

{12} On October 17, 2002, the district court entered an initial judicial review order, directing Father to "reimburse CYFD for child support due and owing according to the New Mexico Child Support Guidelines" for the time Child was in CYFD's custody. The district court further directed CSED to calculate the support owed, setting the period of reimbursement from December 3, 2001 through September 19, 2002. However, no additional support order, calculating the

amount of support owed, was ever presented to the district court.

{13} During a judicial review hearing on March 6, 2003, the issue of child support was once again raised by the parties. The district judge and counsel reiterated their views that the district court lacked jurisdiction to hear Mother's claim for child support from Father in the neglect case. Accordingly, the district court entered an order dismissing the neglect action with prejudice.

{14} On May 21, 2003, Mother applied for services with HSD. On October 30, 2003, Mother, through HSD and the Office of the Attorney General of Texas, filed a petition in Texas district court seeking to establish child support from Father pursuant to the Texas UIFSA. On February 5, 2004, the Texas court issued an "agreed final order," awarding future, monthly child support in the amount of $703 to Mother for a limited period beginning February 2004 and ending September 2004. It does not appear that either party appealed the support order issued by the Texas court.

{15} Instead, on May 18, 2004, HSD filed motions to intervene and reopen the neglect proceeding in the district court for the purpose of reasserting Mother's child support claims against Father. HSD also filed a motion to determine controlling order and a statement of registration of foreign support order for the purposes of contesting the validity of the support order issued by the Texas court and obtaining a determination that the district court issued the controlling order and thus has continuing, exclusive jurisdiction over all child support matters pursuant to the UIFSA and the FFCCSOA. In response to HSD's motions, Father filed a limited entry of appearance to contest personal jurisdiction and a motion to dismiss for lack of personal jurisdiction.

{16} Following a hearing on HSD's motions, the district court entered findings of fact and conclusions of law, and an order expressly denying HSD's motion to reopen, implicitly denying its other motions, and declining to rule on Father's motion to dismiss for lack of personal jurisdiction. In summary, the district court ruled that because it continued to exercise jurisdiction over the child support reimbursement issue, a motion to reopen that issue was not necessary. The district court also concluded that although it had original and general jurisdiction to decide any child support issues incidental to the neglect proceeding, Mother did not timely request child support from Father in the underlying neglect case. Further, it determined that Mother still had a forum in the Texas court to litigate her child support claims against Father. HSD now appeals.

## DISCUSSION

{17} This appeal raises questions of subject matter jurisdiction and statutory interpretation, which we review de novo. *See Palmer v. Palmer*, 2006–NMCA–112, ¶ 13, 140 N.M. 383, 142 P.3d 971 ("The question of whether a court has subject matter jurisdiction is a question of law which we review de novo."); *State ex rel. Children, Youth & Families Dep't v. Paul P.*, 1999–NMCA–077, ¶ 7, 127 N.M. 492, 983 P.2d 1011 ("Issues of statutory interpretation and application are questions of law that this Court reviews de novo.").

### HSD Is Precluded from Collaterally Attacking the Texas Court's Subject Matter Jurisdiction

{18} HSD moves to reopen and intervene in the neglect proceeding for the purpose of pursuing Mother's child support claims against Father. In doing so, it seeks to contest the validity of the support order issued by the Texas court, arguing that the Texas court lacked jurisdiction to enter its support order because the district court retains continuing, exclusive jurisdiction over Father's support obligation to Child, and neither Mother nor Father filed written consents in the district court for the Texas court to assume continuing, exclusive jurisdiction, as required by NMSA 1978, § 40–6A–205(a)(2) (1997, prior to 2005 amendment). Thus, HSD argues, the Texas court's support order is void for lack of subject matter jurisdiction. Typically, subject matter jurisdiction cannot be waived and can be raised at any time. *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 138, 899 P.2d 576, 581 (1995).

{19} In this case, however, HSD is attempting to collaterally attack the subject matter jurisdiction of the Texas court. *See Lewis v. City of Santa Fe*, 2005–NMCA–032, ¶ 10, 137 N.M. 152, 108 P.3d 558 ("A collateral attack is an attempt to avoid, defeat, or evade [a judgment], or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking the judgment.") (internal quotation marks and citations omitted). Apparently dissatisfied with the outcome of the Texas support proceeding, Mother wishes to reassert and litigate her child support claims against Father in the district court proceeding, where Father had previously been ordered to reimburse CYFD for the support and maintenance of Child while in its protective custody. Mother, however, invoked the jurisdiction of the Texas court to establish child support from Father in the first instance. We hold that, under the particular facts of this case, HSD's collateral attack is impermissible.

■ {20} "Ordinarily, a party cannot invoke the jurisdiction of a court for the purpose of securing important rights from his adversary through its judgment, and, after having obtained the relief desired, repudiate the action of the court on the ground that the court was without jurisdiction." *Golden v. Golden*, 41 N.M. 356, 368, 68 P.2d 928, 935 (1937). Although the Supreme Court in *Golden* went on to permit a party's collateral attack of a foreign divorce decree on subject matter jurisdiction grounds, *id.* at 368–73, 68 P.2d at 935–38, our appellate decisions, since *Golden*, have held that a party may not collaterally attack a final judgment on subject matter jurisdiction grounds when the party had the opportunity to challenge subject matter jurisdiction during the original action. *See, e.g., Wallace v. Wallace*, 63 N.M. 414, 419, 320 P.2d 1020, 1024 (1958); *Cordova v. Larsen*, 2004–NMCA–087, ¶ 15, 136 N.M. 87, 94 P.3d 830; *Thoma v. Thoma*, 1997–NMCA–016, ¶ 16, 123 N.M. 137, 934 P.2d 1066; *Alvarez v. County of Bernalillo*, 115 N.M. 328, 329, 850 P.2d 1031, 1032 (Ct. App.1993); *Gilmore v. Gilmore*, 106 N.M. 788, 790–91, 750 P.2d 1114, 1116–17 (Ct.App. 1988); *see generally* K. Moore, *Collateral Attack on Subject Matter Jurisdiction: A Critique of the Restatement (Second) of Judgments*, 66 Cornell L.Rev. 534 (1981). "In such a case, the litigant had the opportunity to raise the jurisdictional issue in the initial litigation and slept on that opportunity." *Id.* at 551–52.

{21} In our view, the proper test to be applied to a challenge of subject matter jurisdiction in a collateral proceeding is set forth in Restatement (Second) of Judgments § 12 (1982):

> When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:
>
> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
>
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
>
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

{22} We conclude that none of the above exceptions applies in this case. First, it cannot be questioned that the Texas court was competent to hear and determine Mother's petition for child support under Texas law. *See* Tex. Fam.Code Ann. §§ 159.102(24) & 159.103 (2002 & Supp.2006) (providing that the courts of Texas are the tribunals "authorized to establish, enforce or modify support orders or to determine parentage" under Texas' UIFSA); Tex. Const. art. V, § 8 (providing for the general, original jurisdiction of Texas district courts). The record, including Mother's UIFSA petition, the documents accompanying the petition, and the support order, which recites that the Texas court had jurisdiction over the subject matter, establishes a conclusive presumption that the Tex-

as court had subject matter jurisdiction. *See Heimann v. Adee,* 1996–NMSC–053, 122 N.M. 340, 346, 924 P.2d 1352, 1358 (explaining that the party mounting a collateral attack must overcome the presumption of jurisdiction, and lack of jurisdiction must appear affirmatively on the face of the judgment or in the judgment roll or record, or must be made to appear in some other permissible manner). Thus, we find no manifest abuse of authority by the Texas court.

{23} Although HSD claims that the Texas court's order is void because the Texas court acted contrary to its authority under the UIFSA and the FFCCSOA, HSD does not, and cannot, claim that the Texas court lacked jurisdiction in the fundamental sense to hear and determine a child support action pursuant to Texas law. *See VanderVossen v. City of Española,* 2001–NMCA–016, ¶ 21, 130 N.M. 287, 24 P.3d 319 (observing "a trend in modern New Mexico jurisprudence that discourages the indiscriminate use of terms such as jurisdictional error and voidness to describe what amounts to little more than an agency acting contrary to statute, an error that must be challenged in a timely manner"); *Alvarez,* 115 N.M. at 328, 330, 850 P.2d at 1031, 1033 (noting that the word "void" can be deceptive and concluding that "the actions of a disqualified judge are not void in any fundamental sense but at most voidable if properly raised by an interested party" because "to hold that jurisdiction of the subject matter is lacking would mean that all such judgments would be open to collateral attack at any time, a highly undesirable result"); *cf.* NMSA 1978, § 40–6A–204(a)(2) & (b)(2) (2005) (providing that in simultaneous proceedings under UIFSA, a contesting party must timely challenge a state's exercise of jurisdiction). Thus, HSD's claim of jurisdictional error is subject to ordinary principles of waiver, estoppel, disfavor of collateral attack, and res judicata. *See generally People v. Am. Contractors Indem. Co.,* 33 Cal.4th 653, 16 Cal.Rptr.3d 76, 93 P.3d 1020, 1024 (2004).

{24} Second, allowing the Texas court's order to stand would not infringe on the authority of the district court to enforce its support order against Father. *See* NMSA 1978, § 40–6A–206 (2005); NMSA 1978, § 40–6A–603 (1994). As we explain below, the two support orders at issue address wholly different support obligations owed by Father: while the Texas order addresses Father's obligation to provide future child support to Mother, the district court's order addresses solely Father's obligation to reimburse CYFD for past child support during the time Child was in CYFD's custody.

{25} Third, although the Texas court clearly possessed authority to pass upon the question of its subject matter jurisdiction, the question does not appear to have been raised in the Texas action. Nor does it appear the Texas support order was appealed by either party. Instead, our review of the record establishes that Mother, through HSD and the Texas Attorney General, invoked the jurisdiction of the Texas court to establish Father's child support obligation to her, without informing it of the district court's existing order, and obtained relief from that court. *See* NMSA 1978, § 40–6A–101(20)(i)–(iv) (1997, prior to 2005 amendment) (defining "support enforcement agency" as authorized to take certain actions); *State of N.M., ex rel. Human Servs. Dep't of Wash. v. Jackson,* 2007–NMCA–061, ¶¶ 10–19, 141 N.M. 647, 159 P.3d 1132 (construing authority of support enforcement agency under UIFSA to bring action to modify the child support obligation of a non-custodial parent living in another state); *see also* NMSA 1978, § 40–6A–307 (b)(3) (1997, prior to 2005 amendment) (providing that support enforcement agency shall "make a reasonable effort to obtain all relevant information"); NMSA 1978, § 40–6A–311(a) (1994, prior to 2005 amendment) (providing that "[t]he petition must be accompanied by a certified copy of any support order in effect"); Tex. Fam. Code Ann. § 159.311(a) (same). Here, the petition and accompanying documents filed in the Texas proceeding reflect that Mother was seeking to establish child support in the first instance, rather than modify any existing support order.

{26} Thus, for the reasons discussed above, we conclude that HSD is precluded from litigating the question of the Texas

court's subject matter jurisdiction in the instant proceeding.

{27} Although HSD claims that Mother did not know of or consent to the Texas proceeding and order, our review of the record supports the district court's finding that the order was stipulated to by the parties, or those in privity with them. Therefore, we do not disturb this finding on appeal. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 129, 767 P.2d 363, 368 (Ct.App. 1988). *see also Lewis*, 2005–NMCA–032, ¶ 14, 137 N.M. 152, 108 P.3d 558 (discussing that "judgments entered by the consent of the parties and upon stipulations have ... been regarded as immune from collateral attack by the parties themselves, or those in privity with them"). *Rex, Inc. v. Manufactured Hous. Comm.*, 119 N.M. 500, 509, 892 P.2d 947, 956 (1995) (recognizing "that when an agency acts on behalf of an individual claimant and seeks individual relief, it is in privity with that claimant and may be barred under the doctrine of collateral estoppel"). Because Mother was represented by HSD and the Texas Attorney General in pursuing her child support claims against Father, she is bound by their actions.

■ {28} HSD further argues that Mother was denied due process because she was not afforded a full and fair hearing on factual issues relevant to reconciling the two support orders in question. HSD contends that had it been given a full hearing on its motions below, it would have presented additional facts establishing that Mother did not personally participate in the Texas proceeding. Because these factual assertions are not of record, however, we cannot consider them on appeal. *See State v. Reynolds*, 111 N.M. 263, 267, 804 P.2d 1082, 1086 (Ct.App.1990).

{29} HSD also argues that because the district court was confused about whether it had jurisdiction to consider any additional child support claims, Mother was misled into filing a support action in Texas. We reject HSD's contention that Mother was forced to file her support action in Texas. When the district court indicated it was not inclined to exercise jurisdiction over any additional child support claims, Mother could have forced the issue by asserting her claims in the neglect proceeding and seeking a writ to compel the district court to exercise jurisdiction over her claims. Instead, Mother invoked the jurisdiction of the Texas court, which had personal jurisdiction over Father, without informing it of the district court proceeding or the support order issued, and obtained relief in the second forum. She has now returned to the initial forum to collaterally attack the second forum's subject matter jurisdiction. Under these circumstances, a collateral attack is not permitted.

{30} Because HSD is not permitted to collaterally attack the Texas court's order for lack of subject matter jurisdiction, we conclude that the order is entitled to full faith and credit under the United States Constitution. U.S. Const. Art. IV, § 1; *Jordan v. Hall*, 115 N.M. 775, 777, 858 P.2d 863, 865 (Ct.App.1993) ("The final determinations by the courts of one state are entitled to full faith and credit in the courts of its sister states."); *see also Thoma*, 1997–NMCA–016, ¶¶ 19–20, 123 N.M. 137, 934 P.2d 1066; *Gilmore*, 106 N.M. at 791, 750 P.2d at 1117. We further conclude that Mother is precluded by the doctrine of res judicata from relitigating her support claims against Father in district court. *See Chaara v. Lander*, 2002–NMCA–053, ¶ 10, 132 N.M. 175, 45 P.3d 895; *Alvarez*, 115 N.M. at 331, 850 P.2d at 1034. Texas law dictates the same result. *Maxfield v. Terry*, 885 S.W.2d 216, 220–21 (Tex.App. 1994); *see also Sherrer v. Sherrer*, 334 U.S. 343, 351–52, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948) (looking at whether relitigation would be precluded under the law of the jurisdiction issuing the judgment).

{31} Our reading of the UIFSA and the FFCCSOA does not compel a different result. Under UIFSA, only a *"nonregistering party"* may seek "to contest the validity or enforcement of a registered order in this state" if a hearing is requested within twenty days after notice of the registration of the order sought to be enforced. NMSA 1978, § 40–6A–606(a) (1997). Similarly, FFCCSOA requires a state to "enforce according to its terms," 28 U.S.C. § 1738B(a)(1), another state's child support order unless the issuing state court lacked subject matter jurisdiction or personal juris-

diction over the parties, or the parties did not receive notice or an opportunity to be heard. 28 U.S.C. § 1738B(c). Accordingly, both statutes appear to authorize only the nonregistering or defending party in an enforcement proceeding to contest the validity of a registered order. The statutes do not expressly allow a party who obtained relief under a support order to register the order solely for the purpose of collaterally attacking it on jurisdictional grounds.

{32} We note that HSD cites two cases, *Stone v. Davis,* 148 Cal.App.4th 596, 55 Cal. Rptr.3d 833 (2007), and *McCarthy v. McCarthy,* 785 So.2d 1138 (Ala.Civ.App.2000), to support its contention that a party may challenge another court's support order on subject matter jurisdiction grounds under the UIFSA, even when that party invoked the jurisdiction of the other court to modify the original order. However, these cases can be factually distinguished from this case because they involve proceedings that were brought clearly for the purpose of modifying an earlier support order. Under the particular facts of this case, we adopt and follow the Restatement approach outlined above.

**Because the Texas Court Did Not Modify the District Court's Order, the Texas Court Did Not Act Contrary to the Jurisdictional Provisions of the UIFSA and the FFCCSOA**

■ {33} In attempting to invalidate the Texas court's support order, HSD argues that the Texas court lacked subject matter jurisdiction to enter its order pursuant to the UIFSA and the FFCCSOA. HSD predicates its argument on the jurisdictional provisions of Section 40–6A–205(a). According to this section, the tribunal issuing a child support order has continuing, exclusive jurisdiction to modify its support order as long as one of the individual parties or the child continues to reside in the issuing state, and the parties do not agree to the contrary. UIFSA § 205 cmt. (2001), 9 (Part IB) U.L.A. 193 (2005). HSD argues that because the district court entered a "support order" as that term is broadly defined under Section § 40–6A–101(21), it retains continuing, exclusive jurisdiction to modify its support order

pursuant to Section 40–6A–205. Thus, applying Section 40–6A–205 to this case, HSD argues that because Mother and Child continue to reside in New Mexico, and Mother and Father did not file written consents in the district court for the Texas court to assume continuing, exclusive jurisdiction over Father's child support obligation, the Texas court was without subject matter jurisdiction to enter its support order, modifying the district court's order. We accept for purposes of this decision that the district court issued a "support order," within the statutory definition.

{34} Although HSD's argument has logical appeal and appears to be supported by the law at first blush, it fails when we apply the relevant statutory provisions to the atypical facts of this case. As we explain below, the facts of this case do not support HSD's claim that the Texas court modified the district court's order, contrary to Section 40–6A–205. Instead, the procedural fact pattern presented does not appear to be contemplated by the jurisdictional provisions of the UIFSA, and does not implicate the specific concerns that the UIFSA was designed to address. Therefore, we reject HSD's jurisdictional claim.

{35} As HSD correctly points out, the UIFSA was enacted to replace the Uniform Reciprocal Enforcement of Support Act (URESA), which previously governed support orders involving more than one state. *See Bordelon v. Dehnert,* 99–2625 p. 4 (La. App 1 Cir. 9/22/00); 770 So.2d 433, 436. "Under URESA, a state had jurisdiction to establish, vacate, or modify an obligor's support obligation, even when that obligation was created in another jurisdiction." *Id.* at 5, 770 So.2d at 436. This often resulted in "multiple and inconsistent [support] obligations." *Id.* The UIFSA was developed to redress the problems that arose under URESA, most notably, the modification of "a child support award by more than one state." *Id.* "Thus, UIFSA attempts to limit modification jurisdiction to just one state at a time, once there is an existing child support award issued." *Id.* Under the "one order, one time, one place" policy embodied in UIFSA, there

can be only one controlling support order. *Id.* (internal quotation marks omitted).

{36} Typically, the modification provisions of the UIFSA are invoked in the domestic relations context, when a tribunal has issued a support order, and one or both parties and the child move away from the issuing state, and modification of the existing support obligation is later sought in another state. *See, e.g., Harbison v. Johnston,* 2001-NMCA-051, 130 N.M. 595, 28 P.3d 1136. Usually at issue in both the original and the modification proceedings is a support obligation involving the same parties, i.e., the same obligor, obligee, and child. As the official comment to § 205 of the UIFSA clarifies, "the time to measure whether the issuing tribunal has continuing, exclusive jurisdiction to modify its order, or whether all parties and child have left the State, is explicitly stated to be at the time of filing a proceeding to modify the child support order." UIFSA § 205 cmt. (2001), 9 (Part IB) U.L.A. 194 (2005).

{37} In this case, however, we conclude that the Texas court did not modify the district court's order because the two orders at issue concern separate and distinct support obligations owed by Father. A "modification" is defined under the FFCCSOA as a "change in a child support order that affects the amount, scope, or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order." 28 U.S.C. § 1738(B)(b). Here, the Texas court did not "change" or "affect" the terms of the district court's existing order because the orders entered by the two tribunals address independent support obligations owed by Father to different parties, and thus are not competing or conflicting orders.

{38} In the neglect proceeding, the support order issued by the district court was for the limited purpose of reimbursing CYFD for the cost of providing foster care to Child while in its protective custody. Under the Children's Code, a parent is liable for "the reasonable costs of support and maintenance of the child that the parent is financially able to pay if a child is adjudicated to be neglected or abused and the court orders the child placed with an agency or individual other than the parent." Section 32A-4-26(A). In the proceedings below, CYFD sought to enforce the obligation of *both* parents to reimburse the State for the reasonable costs of support and maintenance of Child while in CYFD's protective custody. *See Alverson v. Harris,* 1997-NMCA-024, ¶ 16, 123 N.M. 153, 935 P.2d 1165 (noting that parents owe a statutory duty "to reimburse the State for costs it incurs in providing services to a child"); *In re Quintana,* 83 N.M. 772, 774, 497 P.2d 1404, 1406 (1972) (recognizing that both parents owe a minor child a duty of support). Thus, in the district court proceeding, CYFD was the "obligee," and Mother and Father were the "obligors," for purposes of the UIFSA. *See* § 40-6A-101(12)(ii) (stating that "obligee" includes "a state or political subdivision to which the rights under a duty of support or support order have been assigned or which has independent claims based on financial assistance provided to an individual obligee"); § 40-6A-101(13) (defining "obligor" as an individual who "owes or is alleged to owe a duty of support"). Ultimately, the district court issued a support order requiring only Father to "reimburse CYFD for child support due and owing according to the New Mexico Child Support Guidelines" for the period Child was in its legal custody. Thus, Mother, who was an "obligor" throughout the neglect proceeding, was not even subject to the support order issued by the district court.

{39} By contrast, the support order issued by the Texas court was for the more general purpose of establishing Father's duty of child support owed to Mother. In this context, Father was the "obligor" and Mother, as the individual claiming support payments from Father, was the "obligee." *See* § 40-6A-101(13); § 40-6A-101(12)(i) (stating that an obligee includes "an individual to whom a duty of support is or is alleged to be owed or in whose favor a support order has been issued or a judgment"). While the support order issued by the district court was for the short and limited duration Child was in CYFD's legal custody, the support order issued by the Texas court covered the period Child was in Mother's custody. Thus, the two support orders govern not only different

parties, but separate and mutually exclusive time frames.

{40} We note that HSD argues that at issue in both the New Mexico and Texas proceedings is Father's support obligation owed to Child. Although we agree that Child "is the person to whom the duty of support is owed, and therefore can be viewed as the ultimate obligee" in both actions, " 'obligee' usually refers to the individual receiving the payments. While this is most commonly the custodial parent," it may also be "a state [entity] [with an] independent statutory claim for reimbursement for general assistance provided to a spouse, a former spouse, or a child of an obligor." *See* UIFSA § 101 cmt. (1996), 9 (Part IB) U.L.A. 310 (2005). Thus, while Child may be considered the "ultimate obligee" in both proceedings, CYFD was the obligee to whom the payment of support was owed in the neglect case, and Mother was the obligee to whom the payment of support was owed in the Texas UIFSA case.

{41} Moreover, as we discussed above, Mother's actions in the Texas proceeding negate any attempt to modify the district court's order. Mother, through HSD and the Texas Attorney General, filed a petition in Texas to establish child support from Father in the first instance. *See* § 40–6A–311; NMSA 1978, § 40–6A–401 (1994, prior to 2005 amendment). She did not request modification of the district court's order or follow any of the procedures necessary to obtain modification of an existing child support order pursuant to the UIFSA. *See* § 40–6A–311(a); NMSA 1978, § 40–6A–609 (1994); NMSA 1978, § 40–6A–611 (1997, prior to 2005 amendment).

{42} Finally, in light of the unique facts of this case, we determine that allowing both support orders to stand would not offend the spirit and purpose of the UIFSA. Although it is true that the UIFSA adopts a "one order, one time, one place" policy, *see Bordelon,* 99–2625 at p. 5, 770 So.2d at 436, and here there is technically more than one support order governing the same obligor and child, we determine that the two orders concern separate support obligations owed to different obligees, and thus are not in con-

flict. Moreover, both orders appear to be fully enforceable under the UIFSA. *See generally* § 40–6A–206; § 40–6A–603; *cf.* NMSA 1978, § 40–6A–208 (2005) (permitting the enforcement of "two or more child support orders in effect at the same time with regard to the same obligor and different individual obligees"); UIFSA § 208 cmt. (2001), 9 (Part IB) U.L.A. 201 (2005) (explaining that "[m]ultiple orders may involve two or more families of the same obligor"). Under these circumstances, we conclude that HSD is not entitled to a proceeding to determine the controlling order. *See* NMSA 1978, § 40–6A–207 (2005); *See* UIFSA § 206 cmt. (2001), 9 (Part IB) U.L.A. 198 (2005) (discussing the priority scheme for determining the controlling order when there exist "orders covering the same parties and child" and "multiple orders regarding the same obligor, obligee, and child").

{43} In summary, because we determine that the support orders issued in the two proceedings involve separate and independent support obligations owed by Father, we conclude that the Texas court did not modify the district court's order. The Texas court's order cannot be viewed as a modification of the district court's order because it does not "affect the amount, scope or duration" of Father's obligation to reimburse CYFD for support, but instead establishes a new obligation owed by Father to Mother. *See* 28 U.S.C. § 1738(B)(b). Nor do we find recognition of both orders contrary to the spirit and purpose of the UIFSA. Therefore, we reject HSD's jurisdictional claim based on the provisions of Section 40–6A–205.

{44} In light of our disposition, we need not address the parties' arguments under Rule 1–060(B) NMRA.

**CONCLUSION**

{45} For the reasons discussed, we affirm the district court's order.

{46} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.