GARCIA, Judge (dissenting). I respectfully dissent in this case. I would agree with Mother that the Legislature did not intend for aggravated circumstances under Section 32A-4-2(C)(4) to be applied in proceedings where the termination of parental rights over a sibling remained unresolved on appeal. As a result, it is not necessary to address the related due process issue raised in this appeal. Mother was entitled to assistance from the Department to remedy the causes and conditions that rendered Mother unable to properly care for Child and originally caused Child to come into the Department’s custody. Section 32A-4-2(C)(4) defines the particular element of aggravated circumstances applied by the district court in this case as: “had parental rights over a sibling of the child terminated involuntarily}.]” (Emphasis added.) Mother argued that this definition requires completion and finality in the involuntary termination proceedings pending for Child’s sibling, including any appeals. It is not disputed that the termination proceedings for Child’s sibling were on appeal and remained unresolved throughout Child’s district court proceedings in the present case. Because of the district court’s decision to apply aggravated circumstances in this case, the Department did not provide Mother with assistance under Section 32A-4-22(C) to attempt reunification and to remedy the causes and conditions that rendered Mother unable to properly care for Child. This Courtreviews issues of statutory interpretation and construction de novo. State ex rel. Children, Youth & Families Dep’t v. Andree G., 2007-NMCA-156, ¶ 17, 143 N.M. 195, 174 P.3d 531. The primary goal in statutory construction is “to ascertain and give effect to the intent of the Legislature.” Lobato v. N.M. Env’t Dep’t., 2012-NMSC-002, ¶ 6, 267 P.3d 65 (internal quotation marks and citation omitted). Both parties recognize that when construing a statutory section in reference to the statute as a whole, this Court will consider the several sections together so that all parts are given proper effect and placed in the appropriate context. Reule Sun Corp. v. Valles, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611. “The appellate courts examine the overall structure of the statute and its function in the comprehensive legislative scheme.” State v. Smith, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022. “[W]hen a statute is ambiguous, we may consider the clear policy implications of its various constructions.” Id. The parties recognize that the statutory construction for the language in Section 32A-4-2(C)(4) has not been previously interpreted by this Court. Initially, the appellate courts start this review “by examining the words chosen by the Legislature and the plain meaning of those words.” Reule Sun Corp., 2010-NMSC-004, ¶ 15. Webster’s Dictionary provides several primary and secondary definitions for the word “terminate.” Webster’s Third New Int’l Dictionary 2359 (1966). Primary definition includes: “a: to bring to an ending or cessation in time sequence, or continuity : CLOSE . . . (benediction terminated the service).” Id. A third primary definition states: “c: to end formally and definitely . . . (his employment with the company was terminated.).” Id. One of the secondary definitions states “2: to set a limit to in space : serve as an ending, boundary, limit, dividing line.” Id. Each of these definitions have a common principle to apply, they recognize a definitive ending or finality to an event or proceeding. As such, an unresolved proceeding, one that is not final and has not reached a definitive end, does not meet the accepted general definition of “terminate” or its past-tense equivalent “terminated.” In this case, the generally accepted definition of “terminated” would appear to support Mother’s position — where a termination proceeding remains unresolved on appeal and has not yet ended formally or definitely, parental rights to a sibling have not been terminated under Section 32A-4-2(C)(4). However, our Supreme Court has recognized that the application of the plain meaning rule does not end an analysis. See State v. Rivera, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 (recognizing that the appellate courts will not rely upon the literal meaning of a statute when such a construction would be absurd, unreasonable, or otherwise inappropriate). We should be looking at the overall legislative scheme regarding the termination of parental rights and address whether the plain meaning of the word “terminated” in Section 32A-4-2(C)(4) contradicts the scheme established by the Legislature under the Abuse and Neglect Act (the Act), NMSA 1978, §§ 32A-4-1 to -34 (1993, as amended through 2009). The majority views this analysis in light of the previous federally recognized problem — that abuse and neglect proceedings were subjecting children to long spells in foster care or returning them to abusive parents. Majority Opinion ¶ 30. This analysis does not explain why the plain meaning interpretation of “terminated” under Section 32A-4-2(C)(4) would subject children to long spells in foster care or return them to abusive parents. In fact, there is no statutory basis under the Act to support the majority’s premise that such an undesirable result would occur. At issue is whether Mother should have been provided services from the Department to attempt reunification and remedy the causes and conditions that rendered Mother unable to properly care for Child. These are the same services and plans designed into the Act for all parents who have been adjudicated as abusive or neglectful that otherwise do not meet one of the two narrow statutory exceptions for expediting the process. See § 32A-4-22(C). Neither the Department nor the majority challenge the general statutory scheme under the Act. This general scheme attempts to efficiently reunify a child with its natural parents and remedy the causes and conditions that rendered a parent unable to properly care for a child in the first place. The Act was enacted in 1993, presumably to help remedy the historic problem where children spent long spells in foster care or were regularly returned to abusive parents. Mother’s interpretation of “terminated” under Section 32A-4-2(C)(4) would not impose any new obligations or procedures upon the Department that are not presently in place. Implementing the standard reunification procedures in this case would not have subjected Child to some indefinite period of limbo or an extraordinary wait for final adjudication. Similar to any normal case, termination proceedings would timely ensue if Mother failed to comply with the Department’s reasonable efforts to effectuate reunification. Mother’s proposed statutory interpretation is far better than the alternative proposed by the majority. Under the majority’s analysis, this Courtwouldbe forced to unring the “aggravated circumstances” bell each time a district court erred in its determination that the parental rights to a sibling were terminated but remained unresolved on appeal. Reversal by this Court of a prior termination would not only send the sibling’s proceedings back for reconsideration, it would also send the “aggravated circumstances” case for the subsequent sibling back for consideration by the district court for further Department efforts. When considering the best interests of a child and the potential length of time a child could be subjected to further custodial limbo and Department supervision, the majority’s decision neither comports with the plain language used by the Legislature in Section 32A-4-2(C)(4) nor efficiently carries out the Act’s comprehensive legislative scheme to avoid long periods of potential supervision and foster care. In conclusion, I do not concur with the result reached by the majority in this case. As a result, I would reverse the district court’s previous determination of aggravated circumstances under Section 32A-4-22(C)(2) and remand for further proceedings in an attempt to reunify the family in compliance with the Act. TIMOTHY L. GARCIA, Judge